Good morning. May it please the court. My name is Cody Bolts. I'm counsel for the appellants in this matter, and I'll endeavor to reserve three minutes of time for rebuttal. In light of this court's recent order on jurisdiction, I wanted to just start with a note on that. We think this court has jurisdiction under 158D1 because the bankruptcy court's order is a final order. We discussed this at length on pages 10 through 13 of our brief. Let me ask the question on this because I've, for whatever reason, had a number of cases now on this jurisdictional question under 158, and I've even had it now where the district court is sitting as a bankruptcy judge, which presents a whole other set of problems. Why is it under 158? We have case law that says you can be more flexible in the 158 context, but this is odd because you have, I mean, the interlocutory appeal, there's no question the district court granted interlocutory appeal under 158, right? Yeah, we accept that Judge Calabretta understood his appellatures to know it's arising under 158. No dispute about that. But at the end of the day, what's before him is a motion in limine, and it's very odd to get a motion in limine. I mean, I guess my question is, is the vehicle by which this comes up, does it matter? Because we would never look in any other context and say, oh yeah, a motion in limine is a final resolution of your rights. But that's the context in which this is coming up. I recognize it is a bit of an odd vehicle, but the motion in limine here were odd. They were about the preclusive effect of district court findings. We're not talking about whether a witness could testify or whether a document could come in. And I would just point this court towards In Re, Century Center Partners. That's a Ninth Circuit case from 1992 that I think is pretty directly on point. That case involved an appeal from a grant of partial summary judgment by a bankruptcy court. The bankruptcy court granted partial summary judgment as to three of four causes of action. The fourth cause of action survived. And this court found that it was a final order and that it had appellate jurisdiction, again, notwithstanding the fact that there was this other cause of action out there, because it resolved those three issues. And that's just like the case here. We do have the 523A6 claim. But whatever happens with that is not going to affect the A7 claim. The court's finding as to the A7 claim was a final resolution of that claim. And so how do we judge on an interlocutory appeal that goes up to the district court? How do we judge whether it's final? Is it, I mean, number one, it's the district court has to decide all issues on the interlocutory appeal. You would agree with that, right? I don't know that the court, district court needs to decide all the issues. I think the district court... No, on the interlocutory appeal. I mean, the interlocutory appeal was limited to this issue, right? That's right. Yes. Yes. So, I mean, I think what it seems to me that it's fairly obvious if a district court only addressed part of the issue. I mean, the district court's order has to be final and that has to mean something. At least it has to be final as to the issue before it on interlocutory appeal. I think that's... But doesn't the district court have to at a minimum decide whether the minimum wages were willful and malicious? I don't think it does because that issue was not before the district court on appeal. The only issue before the district court was this A7 claim, which is why we sought leave to appeal. We recognize we did seek leave to appeal and that's why Judge Calabretta understood jurisdiction as arising under 158A. But we don't think that's dispositive. That was just a belt and suspenders approach. We recognize that bankruptcy finality is a bit fuzzy and as you recognize, Judge Nelson, we've had a number of these cases that have this tricky issue and so that was just simply a matter of taking that issue off the table. We don't think that's dispositive for this court. We think that this court can look at its own appellate jurisdiction and look at the character of the order. Is it a final order? Does it change the status quo? Does it fix the rights and obligations of the parties? Well, and that... So the third one that you just talked about, that seems to be the one that I'm grappling with. Does it fix the rights of the parties? And your argument is it does. If we have this motion in limine and the district court, that's enough to decide this issue preclusively to the parties. That's your position. I think it is, yes. And again, it would be different if this was an ordinary motion in limine to... But is there a way that it could come up in the future? I mean, a lot of reasons why we don't take interlocutory appeals and why we have the jurisdiction that we do is because some decisions are preliminary and the district court might revisit that in another context. Why does that... Why shouldn't we look at that here and say, you know what? We need it. I mean, the case you cited me in the Century Partners, that was a summary judgment. No, it was summary, right? Yes, it was a partial summary judgment. This is not partial summary judgment. This is a motion in limine. So why wouldn't we say, well, maybe this would come... I mean, district courts do this all the time where they may issue something on a motion in limine or a preliminary motion, and then they decide it differently when all the facts are before them. So why wouldn't we say, we just need a summary judgment ruling? Even if it's partial, we're just not going to do this on a motion in limine. But didn't we hold in landmark that remand for further fact-finding defects is basically affects finality? In this case, I don't... Well, wherever it comes from. Sure, sure. I agree that if there were further facts to find or further facts that might change the finding, you'd have no argument for me. I would say, sure, this is a purely interlocutory appeal. That's not the case here. There's no further facts to find as to the A7 claim. It's simply a matter, it's a legal question as to whether the debts are dischargeable on the face of the judgment as written. The judgment won't change. And I think that's the only thing that would change that finding. And again, in full recognition that this is a bit of an odd vehicle given the context, but again, bankruptcy finality is, it is more of a pragmatic doctrine. And I think for our purposes here, the motion in limine order is functioning much like a summary judgment order because it's about the substantive preclusive effect. If, let's say we hadn't, let's say we hadn't taken this up or say we don't think there's jurisdiction here. You've got a district court order on appeal that says, you know, the district bankruptcy that decides the party's rights. If that goes back down, could the bankruptcy court in your mind come to a different conclusion at another stage in the proceeding based on additional information? I don't see how it could, what would change. I mean, I suppose the bankruptcy court could wake up one morning and, you know, has authority to change its findings, I suppose. But again, there's nothing that is going to change. Well, I suppose here, to the extent that it's a legal question, the bankruptcy court, even if we said we don't have appellate jurisdiction, the bankruptcy court would be bound by the district court's decision. And so it could not go another way on the legal question. There would have to be some factual impetus to allow it to decide it differently. I think that's right. And again, it's really a pure question of law. There's no new factual findings. The A-6 claim is based on different factual and legal bases. So whatever happens with that claim, it's not going to change the A-7 claim. So if there's no further question on that, I would just like to turn to the merits. And starting with what this case is not about. This case is not about PAGA penalties, because PAGA penalties is a misnomer. It's about civil penalties that arise from substantive provisions of the Labor Code. PAGA is just a procedural statute by which the State deputizes private attorneys general to enforce its labor law. It was enacted to address the chronic under-enforcement of the Labor Code. These penalties could previously only be sought by the State or local law enforcement. To serve as a private attorney general, the employee must have suffered an injury and needs to meet certain administrative requirements. They can't collect wages. They can only collect these penalties. So let me, I mean, I think you've got a hurdle. All appellants tend to have a hurdle. You got to show an error. But what's hard here in your case, and I want to tell you kind of how I'm thinking about it and then have you respond to it. You agree that 25 percent of the penalty, of the $80,000 penalty, is paid directly to a private party, correct? Yeah, there's no dispute that private individuals will receive it. We don't contest that as a legal matter. We don't think that matters under the language of 523A7, which just makes the debt non-dischargeable to the extent it is for a fine, penalty, or forfeiture, payable to and for the benefit of a governmental unit. Okay, so tell me, because you just read it, and it says payable to. You knew where I was going. I don't understand how you get past that. So I think there's a very simple answer, which is nothing there talks about receipt or end recipient. It's language of obligation, to whom the obligation flows. How is this payable to, how is 25 percent of the award payable to the government? Well, let me give you an example, Your Honor. When we get our paychecks, we recognize that there's going to be a big difference between our gross pay and our net pay. Money will go to the state for our state taxes, to the federal government for our federal taxes, maybe to our health insurance provider. That seems very distinguishable because, well, part of it seems distinguishable. My point, though, just to finish, is that we wouldn't say that our gross wages are payable to these other entities that receive portions of them. Likewise, suppose we have a personal agency fee agreement with her attorney has agreed to pay them 30 percent. I think we all agree that the entire $100 is payable to the injured plaintiff, notwithstanding the fact that she may distribute some of them later. And I think there's case law consistent with this. And I think we should start with Kelly v. Robinson. That's the 1986 Supreme Court case about criminal restitution. And the court there says the debt was non-dischargeable even though the restitution payments were, quote, forwarded to the victim. Likewise, in Ray Jensen, that's a Colorado case dealing with civil restitution sanctions imposed in connection with the state consumer protection statute. And the court found that those debts were non-dischargeable, notwithstanding the fact that some may be shared with the victims. So the critical inquiry, I think, is whether the debt is penal in nature and whether the flows to the state. In the PAGA context, that obligation goes to the state, and the state has simply made a — it's exercised its discretion to distribute some of those funds. And I'm running low on my time here. I just want to close with a quote from a Fourth Circuit case from 1995. That's the HUD v. CCMV case, which I think encapsulates our position. Quote, the Supreme Court has given 523A7 a broad reading and has held that it applies to all criminal and civil penalties, even those designed to provide restitution to injured private citizens. We interpret these cases to say that so long as the government's interest in enforcing a debt is penal, it makes no difference that the injured persons may thereby receive compensation for pecuniary loss. And if there's no questions, I'll preserve the balance of my time. Okay. Good morning, Your Honors. Natalie Rahn, appearing for the Pataxil appellees. May it please the Court, I'll also address with the jurisdictional issue. Do you stick to your position that we have jurisdiction? I agree that the Court has jurisdiction for some similar reasons. Number one being the finality of the issue preclusion motion in Lemonnier ruling. That while the vehicle was a little bit odd, I agree that it has the effect of a summary judgment on the A7 claims. And so to address the Court's earlier, I think, concerns, no facts would be presented at trial because the Court has already made this issue preclusion ruling and determined from a final standpoint that 75% of the fees are non-dischargeable and the 25% are dischargeable. And similarly, as are the attorney's fees. But I have to agree with the Court as far as substantive matter that there can be no reasonable dispute in my mind that the 25% of these fees are payable to the aggrieved employees. That's very clear in the Court's order and I just don't see how we get around that. The appellants have asked the Court to essentially or the purpose of the fees. But that conflates the two separate elements in the A7 statute, which necessarily requires that the Court determine both that this is for the benefit of the government and also payable to. And so we can't conflate those two issues. We have to assume Congress meant two different things by those two different elements. And in this case, just simply cannot meet both of those elements. Does it even meet the for the government provision? Even if you take them separately, does it even meet the for the government, for the benefit of the government? Is this for the benefit of the government or the benefit of the public? Certainly not the 25%. I think that that's never for the benefit. That is not for the benefit of the government. As far as the Medina case goes, I think that the Medina recognized that it was critical. The Court said it was critical in that case that there wasn't a judgment that already distributed an amount to the aggrieved employees. But I think even then the Medina Court got it wrong because there was no dispute at any point that 25% necessarily was required to be distributed to the aggrieved employees by statute. That 25% was never going to go and benefit or benefit the government. So it wouldn't have met either of the prongs. Counsel, would that same reasoning apply in a restitution context or a crime victims fund context? The money's going to the government, they're paying it out, but ultimate beneficiary is the private person. Well, I think the reasoning is similar, but in that case we don't have a payable to issue because the restitution fees are going to be paid to the government where we don't have that in this case. Right, but the payable is the government distributed to private parties. In a restitution sense, yes. In a PAGA sense, no. The amount, the 25% is not going to be paid to the state at any point in this case. And if I'm not mistaken, and I think you cited some cases where even if it were paid to the state, if the state had a legal obligation to just hand that over and they didn't have any discretion on that, that still wouldn't be payable to. I think there was that N. Ray Towers case out of the Seventh Circuit, the Rashid case out of the Third Circuit. Am I right in how I'm reading that? Is that your argument? I mean, I guess to a certain degree it doesn't matter because this is never paid to the state. Both correct, yes. That is not an issue in this case because it's never paid. That also was my argument and that was the ruling in the case, which was cited and relied on by the Jensen case. They relied on the Towers case, which ultimately held that yes, and distinguished the HUD case because in Jensen it distressed those two cases. And in Towers, that was the distinguishing factor that these amounts were earmarked for these particular individuals and so they were not going to benefit the government or be paid to the government as an end recipient. And that was, I think, the distinguishing factor in that. That was also a distinguishing factor in the case relied on in Medina regarding the University of New Mexico, where they said even though the University of New Mexico is the real party in interest, they're not going to receive the funds. They're earmarked for individuals, which is the exact same issue we have in this case. And even more fatal with regard to the attorney's fees, there can be no reasonable argument that the attorney fees would ever be payable to a government, that they benefited the government, or that they were not compensatory in nature. That's exactly what they were. They were meant to compensate aggrieved employees as far as the PAGA part goes, but also they had an independent basis, multiple independent bases on which the court granted attorney's fees to these particular plaintiffs. And I think that's best elucidated by the fact that the attorneys in this case are the claimants. They're parties to the appeal. They are the ones who disputed dischargeability. That's because they're the ones who are going to receive the attorney's fees. And I think with that, if the court has no further questions, I can reserve the rest of my time. Well, there's no reserving because you are the appellee. I'll ask a question. I'll sell the situation. So these programs, the PAGA law or other mechanisms that, you know, key TAM statutes, are enacted in part because there's support for this in our system. And the citizens want to have this. It's a vehicle where they can step in the shoes of the government temporarily and go after someone for conduct that violates either the law or violates regulation, whatever it might be. And you're allowing the miscreants to get away with it because they can just discharge in bankruptcy because the money's not going to the government because the government has a program set up to allow private parties to step in their shoes. How does that make sense? Why is that not for the benefit of the government? Because the government's going to enact this program in the first place. Well, I think we have to look at two things. Partially, it is for the benefit of the government, and they've got it set up, but they're only benefiting to the extent of the 75 percent that they're receiving. The 25 percent that is dischargeable in this case or has been ordered dischargeable is not for the benefit. Maybe the law doesn't get passed in the first place if 100 percent goes to the government because people say, well, this is designed to provide an incentive for people to go after the bad actors because the government's not doing its job. So we're going to pass a law that has broad-based support, majority support, that allows the private party to get some extra benefit. Well, I think the legislature set it up this way with the 75 percent going to the state and the 25 percent going to the employees essentially to incentivize them. But I think that for that reason and also for the reasons set forth in the congressional intent in 523A7, that may be true. There may be some benefit. There, of course, is some benefit. I don't think we can reasonably argue there's not a benefit to the government in enacting PAGA penalties. But that doesn't get to the end result recipient issue, the payable to issue, and also the argument that the 25 percent is not ultimately going to benefit. Where does the end result, the ultimate payee, where does that come into play? I mean, the statute says payable to is payable to the government. The government distributes it as they choose. What if the government said, we're going to take this money and distribute it to needy families or some other program like that? Would that be beyond the scope of the discharge? Well, I think that takes it a step further because in that case, it's payable to the government and the government has discretion on where it's going to distribute, whereas we don't have that here. The legislature has already outlined exactly where the funds are going to go, and it doesn't have a mechanism where even the state receives it. It goes, well, at least in this judgment, there's not a mechanism where the state will ever receive the 25 percent. Conceivably, it's going to go to some third-party administrator who will distribute it to the aggrieved employees is usually how PAGA actions function. I don't know if that answers your question. The same analysis with regard to the attorney's fees? A different analysis with regard to the attorney's fees because in this case, I think it fails all four prongs of 523A7. It's not a fine or a penalty. It's compensatory in nature, meant to compensate the individuals who bring the action in connection with multiple other actions that they're bringing, not just PAGA, but the $800 and plus thousand dollars that they actually did recover. It's not payable to the government, and it's not for the benefit of the government. At least in this case, I don't think we can argue that it was solely for the benefit of the argument. It incentivizes the party to bring the claim because a lawyer will take their case because there's a chance they get an attorney's fees award. That benefits the government because the government doesn't have to supply the staff to handle all these claims and go after these folks violating the law. Well, I think that there's the fact that there were multiple other statutes under which the attorney's fees were awarded also combines to the incentive. But to your point, yes, I could see the benefit to the government in that way, but it still doesn't meet the rest of the It's not a fine or a penalty. It's compensatory. It's incentivizing to make sure that the individual employees who are bringing the case don't have to come out of pocket to incur their own expenses. It's meant to sway those fees to the employer. If there are no further questions, I thank you for your time. Thank you. Just a few quick points. Judge Morris, I think you hit the nail on the head when you talked about distribution. We all agree there's a line of cases, Kelly, Jensen, et cetera, where states have discretion to make distribution to other parties. The only difference here is that the state has done it on the front end in the statute. It seems strange to say that if this was just the LWDA's practice to distribute it this way and it wasn't a statute and we all recognize that ultimately it would be distributed in that way, that suddenly the nature of the debt would change. I don't think it would. States have discretion to do that. I guess I don't understand how that argument, can you address In re Towers and Rashid, the Seventh Circuit and the Third Circuit cases, because in those cases it was payable to the government and they said it's still not payable to because the government has a legal obligation to send that on. It's only when there's discretion in the HUD case that you could argue that it was payable to the government. I think the key distinction is that these cases involve restitution. That are intended to recompense other parties. The penalties at issue here, like I said, are labor code penalties that are in the substantive labor code provisions that are recoverable by the state, $100 violation. There's no private right of action to that. At the time that violation arises, it is fully payable to the state. PAGA is just an enabling that expands who can bring those claims and who ultimately, how they're distributed. I also want to note that the end recipient rule, I don't see that in any of the cases. It may often be the case that payable to means who's going to end up with it. But there's not some hard end recipient rule. In fact, I gave you a series of cases in which payments were made to private individuals. I also want to note that I don't think we conflate the payable to and for the benefit of element. Like I said, in our understanding, payable to simply means that the right runs to the government. You could have things that fit the other four elements that aren't payable to under that. What are you relying on for that? Because if we were just to look at a common understanding of payable to, I just don't see how your theory fits within that. Don't worry, I'll give you time to answer that. Sure. I'll answer that quickly. Again, I would come back to the examples that I gave. We often, money is payable to us that gets distributed. The example of the plaintiff or our paychecks. We wouldn't understand that our paycheck is payable to Aetna or the Franchise Tax Board. We're taxed on the gross amount. If our employer didn't pay us our full wages, and we sued for the non-payment of wages, the employer couldn't show up and say, oh, sorry, actually, you're only entitled to some percent because the rest of it wasn't payable to you. It was payable to the IRS or Kaiser Permanente, et cetera. I see my red light is on. If there's no questions, I'll thank the court for its time. Okay. Thank you. Thank you to both counsel for your arguments in the case. The case is now submitted.
judges: SMITH, NELSON, Morris